1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EUGENE ROTTER,

          Plaintiff,

    v.

CONAM MANAGEMENT CORP.,

          Defendant.

Case No.  C04-1458L

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendant ConAm Management Corporation ("ConAm").  (Dkt. #11).  Plaintiff Eugene Rotter brings this suit against ConAm, his former employer, alleging discrimination based on disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); discrimination on the basis of age and disability in violation of the Washington Law Against Discrimination, RCW 49.60 *et seq.* ("WLAD"); and wrongful termination in violation of public policy.

The Court grants in part and denies in part ConAm's motion for the reasons set forth in this Order.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 1

## II.  DISCUSSION

**A.      Background Facts.**

Plaintiff Eugene Rotter ("Rotter") suffered a cardiac arrest in 1998 and was required to have an implantable defibrillator.  In September 1998, he was hired by Pacific Gulf Management as a maintenance technician at the Heatherwood Apartments.  In December 1998, ConAm assumed ownership of the apartments and changed their name to Pheasant Run.  Rotter submitted an employment application, was hired, and worked for ConAm as a maintenance technician between December 1998 and January 2004.  Rotter was fifty-five years old when ConAm hired him.

**1.      Rotter's Employment at Pheasant Run Apartments.**

In May 1999, Rotter's physician completed and forwarded to ConAm an Occupational Medical Questionnaire, restricting Rotter from lifting in excess of 50 pounds, repetitive bending and lifting, working at heights, climbing ladders or scaffolds, and working around hazardous equipment or machinery.[1]  Rotter alleges that despite his restrictions, he was given work orders requiring him to move washers, dryers, and water heaters, which exceeded his restrictions.  Declaration of Eugene Rotter (Dkt. #24) ("Rotter Decl.") at ¶ 7; Declaration of Sue Morton (Dkt. #26) ("Morton Decl.") at ¶ 2. Rotter reminded his supervisor, Richard Woolard, about his restrictions, and Woolard stated that he would help him move heavy items.  Rotter alleges that no one came to help him, so he had to call his son, Chad Duncan, to assist him.  Rotter Decl. at ¶ 10;

---

[1] ConAm alleges that it did not learn that Rotter had any work restrictions until May 1999.  Rotter contends that he informed ConAm about his condition and work restrictions when he submitted his employment application and again shortly after he was hired.  The factual dispute is not material because Rotter does not allege that ConAm failed to accommodate him in 1998 or 1999.

1   Declaration of Chad Duncan (Dkt. #25) ("Duncan Decl.") at ¶¶ 3, 4.  Rotter cites two

2   specific examples of times he was not provided assistance.  He alleges that on a Saturday,

3   he received a call from "someone" – presumably a tenant – that a water heater had

4   exploded and she could not reach Woolard, who was on call that weekend.  Because

5   "Woolard was not answering his calls," Rotter believed that he "had to deal with

6   replacing the water heater," so he called his son to assist him.  Rotter Decl. at ¶ 11.

7   Rotter also alleges that in February 2001, he "was instructed to sprinkle salt on the

8   driveways to melt the ice.  [He] was forced to carry a 5-gallon bucket of ice melt, which

9   weighed approximately 75 pounds when it was full."  Rotter Decl. at ¶ 9.  Rotter slipped

10  on the driveway, broke his ribs, and did not return to full duty until June 2001.

11      Rotter also alleges that around September 2001, when Woolard was hired as a

12  maintenance supervisor, Woolard made age and disability-based comments to Rotter

13  approximately twice per week, including: "You need to quit working and get 100%

14  disability;" "You need to quit and get on full disability;" and "Why don't you just quit

15  and get full disability?"  Rotter Decl. at ¶ 12.  Because Woolard believed that Rotter was

16  wasting too much time socializing, he instructed Rotter not to talk to any of the

17  employees, residents, or vendors.  Rotter Dep. at 43; Rotter Decl. ¶ 14.  Woolard also

18  "yelled at" Rotter, accusing him of not doing his work, and assigned more arduous work

19  to Rotter and to a fifty-four-year-old technician.  Another employee observed that

20  Woolard assigned additional work to Rotter while younger workers sat around doing

21  nothing. Morton Decl. at ¶ 7.  Rotter complained about Woolard's behavior to Agne

22  Elliot, the apartment manager, but the harassment continued.  Rotter Dep. at 43-44;

23  Rotter Decl. at ¶ 13.

24      In May 2002, Woolard complained to Fran Billings, Vice President of ConAm,

25

26  ORDER REGARDING MOTION
    FOR SUMMARY JUDGMENT - 3

1  that Rotter was wasting time, talking too much with vendors and coworkers, being

2  disrespectful, and calling his supervisor "boy."  Billings Dep. at 24.  Rotter contends that

3  he initiated the contact with Billings in May 2002 to complain about Woolard.  Rotter

4  Decl. at ¶ 13.  When Rotter referenced ConAm's discrimination policy, Billings

5  responded, "That policy means nothing to me."  Id.  Billings denies that this conversation

6  occurred or that she ever received a complaint of discrimination from Rotter.  Billings

7  Dep. at 23-25.  Rotter alleges that he requested a transfer away from Woolard because of

8  the harassment; ConAm counters that he complained of a personality conflict, not

9  harassment.  Rotter was subsequently transferred to work at ConAm's Hampton Bay

10  apartments.

11          **2.      Rotter's Employment at Hampton Bay Apartments.**

12          Rotter alleges that he continued to experience harassment based on his age and

13  disability after his transfer to the Hampton Bay apartments.  Rotter states that Sonny

14  Brands, a forty-two-year-old maintenance supervisor, made the following comments to

15  him: "You need to see if you can get disability and quit working," and "You need to get

16  out of this, see if you can get disability or social security."  Rotter Decl. at ¶ 17.  Rotter

17  alleges that he complained about Brands' comments to Rosilee Hernandez, the apartment

18  manager.  Although Hernandez promised to address the issue, the harassment continued

19  until Brands left Hampton Bay around February 2003.  Jesus Aquino, a new

20  groundskeeper, made the following comments to Rotter: "You can't do anything, why are

21  you here?"; "You are no good here;" "You need to retire;" and "You need to retire and

22  draw disability or social security or whatever you can get."  Rotter Decl. at ¶ 19.  Rotter

23  complained to Hernandez again, and to Hernandez's replacement Kim Wilhite, about

24  Aquino's comments.  However, Aquino continued to make the comments until Rotter left

25

26  ORDER REGARDING MOTION
    FOR SUMMARY JUDGMENT - 4

1  Hampton Bay.

2         In April 2002, ConAm informed its employees, including Rotter, that Washington

3  had passed a law requiring maintenance personnel to obtain an electrical training

4  certificate.  Rotter informed ConAm that he would not be able to obtain the certificate.

5  ConAm received a note from Rotter's physician stating, "Mr. Rotter can no longer work

6  with anything electrical since he received his defibrillator."  Rotter Dep., Ex. 8.  ConAm

7  requested clarification, and Rotter's physician noted that Rotter should "avoid arc

8  welding and sources with high amperage."  Rotter Dep., Ex. 11.

9         By November 2002, Rotter was refusing to perform numerous duties of the

10  maintenance technician job; he would not change plugs, work around the pool or spas,

11  work on ladders or on the roof, paint over his head, change linoleum or repair carpets.

12  Rotter Dep. at 73-75, 79, Ex. 15.  Although some of the tasks appeared to be within his

13  medical restrictions, ConAm did not require him to perform these tasks.  Instead, they

14  changed his title to groundskeeper and assigned him more duties working on the grounds.

15  Rotter alleges that the position change was a demotion.  The groundskeeper position

16  included pushing and pulling dumpsters and attaching them to a truck; the dumpsters

17  weighed more than 50 pounds.  Although Rotter performed the dumpster work for a

18  while, he was relieved of the duty as soon as he complained that it exceeded his

19  restrictions.  Rotter Dep. at 69-71, 93, 143.  By February 2003, Rotter was placed back

20  into his regular position performing his usual job duties.

21         In October 2003, Rotter requested, and was granted, a leave of absence to have his

22  defibrillator replaced.  He was given light duty work when he returned to work at the end

23  of October, and was able to work full duty, with his previous restrictions, as of December

24  1, 2003.

25

26  ORDER REGARDING MOTION
   FOR SUMMARY JUDGMENT - 5

1          **3.      Rotter's Suspension.**

2          On December 16, 2003, during an audit of storage space at Pheasant Run, it was

3  discovered that Rotter kept a personal, locked storage space on the property, even though

4  he had not worked there in approximately a year and a half.  Inside the storage space,

5  Hernandez found supply boxes from the company from whom ConAm ordered supplies,

6  and supplies that were regularly used to "turn" apartments between renters.  ConAm's

7  employment policies strictly prohibit removing or borrowing ConAm equipment,

8  supplies, or parts.  Hernandez removed the items she believed belonged to ConAm and

9  put them in a separate locked storage space until the issue of ownership was resolved.

10 Hernandez gave Rotter a list of the items that had been moved.  Jessica Potter, ConAm's

11 Regional Administrator, discussed the issue with Rotter on several occasions.  When

12 questioned about the supplies, Rotter initially said that they belonged to his landlord

13 although he could not remember his landlord's name.  On December 26, 2003, Ms. Potter

14 wrote Rotter a letter noting that ConAm was concerned that he had used the storage space

15 without permission or payment since his transfer in June 2002 and had stored ConAm

16 supplies in the space.  Ms. Potter informed Rotter that he was required to remove his

17 items from the storage space and provide receipts for the supplies by January 9, 2004.

18 The deadline was extended, but Rotter continued to refuse to provide proof of ownership

19 or any additional information.  Although Rotter knew that he was expected to discuss the

20 ownership issue with ConAm management, he refused to do so because he "just didn't

21 want to deal with the problem."  Rotter Dep. at 123; <u>see also</u> Rotter Dep. at 115, 139.

22         On January 19, 2004, Ms. Potter informed Rotter in a letter that he was suspended

23 for refusing to cooperate with the investigation, and he had ten days to provide receipts

24 for the supplies that were found in his locked storage space.  Rotter Dep., Ex. 25.  Rotter

25

26 ORDER REGARDING MOTION
   FOR SUMMARY JUDGMENT - 6

1    did not provide receipts or contact Ms. Potter.  On January 30, 2004, Rotter filed a charge

2    of discrimination with the Equal Employment Opportunity Commission, alleging that he

3    had been constructively discharged.

4    **B.    Summary Judgment Standard.**

5           Summary judgment is proper if the moving party shows that "there is no genuine

6    issue as to any material fact and that [it] is entitled to judgment as a matter of law."  Fed.

7    R. Civ. P. 56(c).

8           Once a defendant who is seeking summary judgment has demonstrated the absence

9    of a genuine issue of fact as to one or more of the essential elements of the plaintiff's

10   claims, the plaintiff must make an affirmative showing on all matters placed at issue by

11   the motion as to which the plaintiff has the burden of proof at trial.  Celotex Corp. v.

12   Catrett, 477 U.S. 317, 323 (1986).  In such a situation Fed. R. Civ. P. 56(e) "requires the

13   nonmoving party to go beyond the pleadings and by her own affidavits, or by the

14   'depositions, answers to interrogatories and admissions on file,' designate 'specific facts

15   showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e));

16   see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87

17   (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent

18   must do more than simply show that there is some metaphysical doubt as to the material

19   facts").

20   **C.    Disability Discrimination.**

21          **1.    Disability Under the ADA.**

22          ConAm concedes that Rotter is disabled under the WLAD, but argues that he is

23   not disabled under the ADA.  A "disability" under the ADA is a physical or mental

24   impairment that substantially limits one or more of an individual's major life activities.

25

26   ORDER REGARDING MOTION
     FOR SUMMARY JUDGMENT - 7

1   42 U.S.C. § 12102(2).  "To qualify as disabled, a claimant must further show that the

2   limitation on the major life activity is 'substantial.'"  See Toyota Motor Mfg. v. Williams,

3   534 U.S. 184, 195-97 (2002) (noting that the regulations instruct courts to consider the

4   nature and severity of the impairment, its duration or expected duration, and the actual or

5   expected permanent or long-term impact).

6        Plaintiff alleges that he is limited in the major life activity of working, so he must

7   raise a genuine issue of material fact as to whether his condition "significantly restrict[s]

8   his ability to perform either a class of jobs or a broad range of jobs in various classes as

9   compared to the average person . . . ."  29 C.F.R. § 1630.2(j)(3)(i).  Plaintiff simply lists

10  his physical restrictions, notes his cardiac condition, then concludes that he was unable to

11  perform a broad range or class of jobs.  Plaintiff falls well short of his burden.  He has

12  presented no vocational evidence to support his conclusion.  Most significantly, Rotter

13  has not identified *which* range or class of jobs he is unable to perform.

14       Finally, plaintiff alleges that even if he is not disabled under the ADA, he

15  nevertheless can pursue ADA claims because ConAm regarded him as disabled.  A

16  person is regarded as disabled if his or her employer mistakenly believes that the person

17  has an impairment that substantially limits one or more life activities, or mistakenly

18  believes that an actual, nonlimiting impairment substantially limits one or more major life

19  activities.  See, e.g., Coons v. U.S. Dept. of Treasury, 383 F.3d 879, 886 (9th Cir. 2004).

20  Plaintiff argues that Billings "willingly admits [he] is disabled under the ADA."

21  Plaintiff's Opposition at 17.  In support, plaintiff cites to an e-mail from Billings

22  regarding the storage locker; the first line of the e-mail states, "Eugene Rotter is assistant

23  maintenance at Hampton Bay.  He is ADA and in the past has complained to Chris that I

24  have been discriminatory."  Declaration of Roxanne L. Rarangol (Dkt. #23) ("Rarangol

25

26  ORDER REGARDING MOTION
    FOR SUMMARY JUDGMENT - 8

1  Decl."), Ex. 8.  Rotter presents no evidence regarding what Billings meant by the brief

2  reference or that she regarded him as disabled as defined by the statute.  For these

3  reasons, the Court finds that Rotter was not disabled for purposes of the ADA.

4       **2.  Failure to Accommodate.**

5       An accommodation claim under the WLAD presents the issue of "whether the

6  employer met its affirmative obligation to reasonably accommodate the handicap."

7  Pulcino v. Federal Express Corp., 141 Wn.2d 629, 640 (2000).  It is undisputed that

8  ConAm provided Rotter with various accommodations during his employment, including

9  excusing him from performing some tasks, time off, and light duty work.

10       Rotter contends that he received work orders requiring him to move washers,

11  dryers, and water heaters, but ConAm failed to provide him the promised assistance.  In

12  his deposition, however, Rotter admitted that he was provided assistance for tasks outside

13  his restrictions, including moving appliances.  Rotter Dep. at 29, 41-42, 49-50.  He

14  cannot create an issue of fact by submitting a declaration that contradicts his

15  unambiguous deposition testimony.  See, e.g., Marshall v. AC & S Inc., 56 Wn. App.

16  181, 185 (1989).  Regardless, Rotter has not shown that he was *required* to work outside

17  his restrictions.  Instead, it appears that he chose to complete certain tasks himself, or

18  with his son, rather than requesting or waiting for company assistance.[2]

19  _____

20     [2] This case is factually similar to Anica v. Wal-Mart Stores, Inc., 120 Wn. App.
    481, 488 (2004), in which the plaintiff alleged that Wal-Mart kept her in a position with

21  duties that forced her to violate her restrictions, even though the employer was aware of
    the restrictions.  The Anica court noted, "But Anica herself admitted that when she

22  returned to work, Wal-Mart managers instructed her to not exceed her limitations.  Wal-
    Mart did not have a further responsibility to accommodate Anica until she gave sufficient

23  notice of her need for further accommodation."  Anica, 120 Wn. App. at 490 (affirming

24  summary judgment).  This pronouncement is consistent with the general requirement that
    an employee must provide notice of his or her limitations and cooperate with the

25

26  ORDER REGARDING MOTION
    FOR SUMMARY JUDGMENT - 9

1    Similarly, Rotter alleges that after his transfer, his job duties included pushing and

2  pulling heavy dumpsters.  Although Rotter was restricted from *lifting* anything over fifty

3  pounds, he was not restricted from pushing or pulling until November 2002.  <u>See</u>

4  Rarangol Decl., Ex. 16 (Rotter "cannot lift or maneuver anything weighing more than 50

5  pounds").  A few days after receiving the maneuvering restriction, Rotter complained

6  about the dumpsters.  Rotter admits that as soon as he complained, ConAm informed him

7  that he was not required to move the dumpsters and he never did so again.[3]  Accordingly,

8  Rotter has not shown a dispute of fact regarding whether he was denied any medically

9  necessary accommodations.

10    **3.    Termination.**

11    When considering a discrimination claim pursuant to the WLAD, Washington

12  courts utilize the <u>McDonnell Douglas</u> burden-shifting method.  <u>Hill v. BCTI Income</u>

13  <u>Fund-I</u>, 144 Wn. 2d 172, 180 (2001) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411

14  U.S. 792 (1973)).  Under the <u>McDonnell Douglas</u> protocol, once the plaintiff sets forth a

15  prima facie case of unlawful discrimination and the defendant produces admissible

16  evidence of a legitimate, nondiscriminatory explanation, then the burden shifts back to

17  the plaintiff who must produce evidence that the defendant's proffered reason for the

18  adverse action was pretextual.  <u>Id.</u> at 185-86; <u>see also</u> <u>Anica</u>, 120 Wn. App. at 488

19  (plaintiff must provide some evidence that his or her discharge occurred under

20

21  employer regarding accommodations.  <u>See generally</u> <u>Goodman v. Boeing</u>, 127 Wn.2d

22  401, 408-09 (1995).

23    [3] Although plaintiff's opposition memorandum states that Rotter "was not taken
    off dumpsters until one month" after he complained, Rotter repeatedly stated in his
24  deposition that he was taken off dumpsters as soon as he complained.  Plaintiff's
    Opposition at 4; Rotter Dep. at 69-71, 76, 93, 143.
25

26  ORDER REGARDING MOTION
    FOR SUMMARY JUDGMENT - 10

1    circumstances that raise a reasonable inference of unlawful discrimination).[4]

2        Rotter alleges that he was discharged because of his disability.  As an initial

3    matter, ConAm alleges that Rotter was not discharged, but instead chose to seek

4    unemployment benefits rather than cooperate with the company's investigation into the

5    storage issue.  The Court finds that even if Rotter was discharged, it did not occur under

6    circumstances raising an inference of discrimination.  Plaintiff was not replaced by a

7    younger or non-disabled worker, and none of the decisionmakers made derogatory

8    remarks about his age or disability status.  Instead, plaintiff alleges an inference is

9    supported by the fact that he had a history of complaining about age and disability-based

10   harassment and of requesting accommodations, including a brief leave in October 2003 to

11   replace his defibrillator.  He was suspended just two months later.  The timing of Rotter's

12   suspension, however, is insufficient to meet his burden.  "[C]oincidence is not proof of

13   causation."  <u>Anica</u>, 120 Wn. App. at 489 (affirming grant of summary judgment; fact that

14   plaintiff was discharged a few days after disability-related leave was not proof of

15   causation).  As the <u>Anica</u> court noted, a plaintiff's history of requesting accommodations

16   can undermine an inference of discrimination if the employer did not discharge the

17   employee after previous accommodation requests.  <u>Id.</u> at 489.  In this case, assuming the

18   facts as alleged by plaintiff, ConAm knew of his medical condition and restrictions when

19   they hired him, and they continued to employ him and provide various accommodations

20   throughout his employment.  These facts undermine any inference of discriminatory

21   motive.

22   _____

23       [4] Plaintiff's oposition does not allege that Rotter's demotion was discriminatory.
     Even if it had, ConAm has provided a legitimate non-discriminatory reason, that the

24   grounds position was more consistent with Rotter's restrictions, and Rotter has not
     rebutted that reason or provided any evidence to raise an inference of discrimination.

25

26   ORDER REGARDING MOTION
     FOR SUMMARY JUDGMENT - 11

1    Plaintiff also contends that the reason for his discharge was a pretext for

2    discrimination because the company knew he kept the storage unit.  Rotter has presented

3    no evidence to counter ConAm's assertion that it did not know that Rotter kept company

4    property in the storage space until December 2003.  Moreover, he readily admits that he

5    refused to cooperate in the investigation.  Finally, plaintiff has provided no evidence that

6    other employees did anything similar but were treated differently.

7    For the foregoing reasons, the Court finds that Rotter has failed to identify a

8    genuine issue of material fact regarding his disability discrimination claim.

9    **D.    Wrongful Termination in Violation of Public Policy.**

10   Plaintiff contends that ConAm discharged him in violation of public policy

11   because he was exercising his rights to seek reasonable accommodation and to complain

12   about harassment.  To establish a claim for wrongful discharge in violation of public

13   policy, a plaintiff must prove three elements: (1) the existence of a clear public policy; (2)

14   that discouraging the conduct in which he or she engaged would jeopardize the public

15   policy; and (3) that the conduct caused the discharge.  See, e.g., Korslund v. Dyncorp Tri-

16   Cities Servs., Inc., 121 Wn. App. 295, 318 (2004).  If the employer presents evidence that

17   its conduct was justified, the employee must show that the justification was invalid or

18   pretextual.  See id.

19   Assuming that a public policy theory is applicable to plaintiff's discrimination

20   claims, plaintiff has not shown the existence of a genuine issue of fact regarding whether

21   he was discharged because of any protected conduct.  As set forth above, ConAm has

22   shown that it had a legitimate, non-discriminatory reason for its actions, and Rotter has

23   not provided any evidence of pretext.  Accordingly, his public policy claim fails as a

24   matter of law.

25

26   ORDER REGARDING MOTION
     FOR SUMMARY JUDGMENT - 12

1  **E.      Hostile Work Environment.**

2          The Washington Supreme Court has recognized a cause of action for a disability-

3  based hostile work environment.  See Robel v. Roundup Corp., 148 Wn.2d 35, 45 (2002).

4  A plaintiff must prove that (1) he or she was disabled within the meaning of the

5  antidiscrimination statute, (2) the harassment was unwelcome, (3) it was because of

6  disability, (4) it affected the terms and conditions of employment, and (5) it was

7  imputable to the employer.  See id.; see also Glasgow v. Georgia Pac. Corp., 103 Wn.2d

8  401, 407 (1985) (when a supervisor or coworkers created the hostile environment, the

9  employee must show that the employer knew or should have known of the harassment

10  and "failed to take reasonably prompt and adequate corrective action").[5]  The claim

11  elements are essentially the same for a harassment claim under the ADEA.  See, e.g.,

12  Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1109 (9th Cir. 1991)

13  (recognizing age harassment claim under the ADEA).

14          In this case, ConAm disputes that the harassment affected the terms and conditions

15  of Rotter's employment.  This element requires that "the conduct or language complained

16  of was so offensive or pervasive that it could reasonably be expected to alter the

17  conditions of plaintiff's employment."  Robel, 148 Wn.2d at 45 (internal citation and

18  quotation omitted).  The Court considers the frequency and severity of the discriminatory

19  conduct; whether it was physically threatening or humiliating, or a mere offensive

20

---

21          [5] ConAm concedes the first element.  Although ConAm implies that Rotter may
22  have invited the comments to some extent by referring to Woolard as "boy" and telling a
   younger, female employee to "respect her elders," these comments are insufficient to
23  show that the comments made by Woolard, Brands, and Aquino were welcome.
   Furthermore, although ConAm disputes that Rotter ever complained about the alleged
24  harassment, it acknowledges that the Court must assume he did for purposes of this
   motion.
25

26  ORDER REGARDING MOTION
   FOR SUMMARY JUDGMENT - 13

1  utterance; and whether it unreasonably interfered with the employee's work performance.

2  See Washington v. Boeing, 105 Wn. App. 1, 10 (2000) (evaluating sexual harassment

3  claim under the WLAD).  "Casual, isolated or trivial manifestations of a discriminatory

4  environment do not affect the terms or conditions of employment to a sufficiently

5  significant degree to violate the law."  Id.

6        Rotter alleges that he was subjected to a hostile work environment at Pheasant Run

7  based on his age and disability.  After Woolard became the maintenance supervisor in

8  September 2001, he informed Rotter at least twice a week that he needed to quit and get

9  on full disability or words to that effect.[6]  Rotter felt humiliated.  Rotter Decl. at ¶ 12.

10 Woolard also yelled at Rotter for not doing his work and assigned more arduous work to

11 him and to a fifty-four-year-old technician.[7]  Although Rotter complained to Elliot and

12 Billings, the harassment continued until he requested a transfer in May 2002 to separate

13 himself from Woolard.  Rotter has raised genuine issues of material fact regarding

14 whether the comments and additional work occurred, whether they were offensive

15 enough to create a hostile and abusive environment based on his disability and age,

16

---

17   [6] ConAm argues that Rotter's current allegations of Brands' and Aquino's
18 harassment are more extensive than the allegations he made during his deposition.  The
   Court considers the contentions as Rotter alleged during his deposition.  ConAm also
19 argues that Rotter never testified in his deposition that he complained that Woolard
   required him to perform more arduous work; however, the provided deposition pages do
20 not show that he was asked questions that should have elicited that testimony.  The Court
   therefore considers Rotter's allegation that Woolard assigned him more arduous work.
21

22   [7] Rotter also alleges that Woolard contributed to the hostile work environment by
   prohibiting him from talking with employees, residents, or vendors.  This allegation does
23 not support Rotter's claim because he does not deny that he was wasting time talking
   during work hours or allege that others were allowed to do so.  Moreover, it appears that
24 Rotter ignored Woolard's directive, and complained to other employees about the no
   talking rule.  Rotter Decl. at ¶ 15.
25

26 ORDER REGARDING MOTION
   FOR SUMMARY JUDGMENT - 14

1   whether he complained, and whether ConAm took reasonably prompt and adequate

2   corrective action.  Robel, 148 Wn.2d at  47-48.

3          Rotter also alleges that he experienced a hostile work environment after he

4   transferred to the Hampton Bay apartments, even though he was working with a new set

5   of coworkers and management staff.  Brands, who Rotter describes as a maintenance

6   supervisor and ConAm identifies as a lead, told him seven or eight times over a four or

7   five month period to see if he could get disability or social security and quit working;

8   Brands also told Rotter he was "too old for this."  Rotter Dep. at 38-39; Rotter Decl. at ¶

9   17.  Aquino, a groundskeeper, made four or five comments to Rotter over the course of a

10  month, including telling him, "You are no good here."  Rotter Dep. at 38-39.  Rotter was

11  offended by Brands' and Aquino's comments.  Rotter complained to Hernandez, the

12  apartment manager, and to Hernandez's replacement Kim Wilhite, but the comments

13  continued.  Although Rotter alleges that he was offended by the comments, he has not

14  shown that a reasonable person would have found the work environment to be abusive

15  and intolerable.  Brands' comments occurred during casual conversation and were

16  arguably aimed at advising rather than degrading Rotter.  Rotter Dep. at 39.  Aquino was

17  a peer and although his comments were objectively offensive, they occurred only four or

18  five times and ended after one month.  Most significantly, Rotter does not allege, and

19  there is no evidence, that the conduct interfered with his work performance at Hampton

20  Bay.  See Washington, 105 Wn. App. at 11 (affirming summary judgment where none of

21  the conduct or comments unreasonably affected plaintiff's work performance).

22  Accordingly, Rotter has failed to show that the comments were sufficiently severe and

23  pervasive to alter the terms and conditions of his employment at Hampton Bay.

24

25

26  ORDER REGARDING MOTION
    FOR SUMMARY JUDGMENT - 15

**III.  CONCLUSION**

For all of the foregoing reasons, ConAm's motion for summary judgment (Dkt. #11) is GRANTED IN PART AND DENIED IN PART.  Rotter may pursue his age and disability-based hostile work environment claim under the WLAD and the ADEA based on his employment at Pheasant Run while Woolard was his supervisor.  The remainder of his claims are dismissed.

DATED this 19th day of May, 2005.

*MW S Lasnik*
Robert S. Lasnik
United States District Judge